# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LANEY J. BARE, | DOCKET NUMBER |
| Appellant, | CH-0752-18-0275-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE: February 21, 2025 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Steve Newman</u>, Esquire, New York, New York, for the appellant.

<u>Brian R. Hurey</u>, Esquire, Indianapolis, Indiana, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed his removal. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The appellant's removal is NOT SUSTAINED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The agency removed the appellant from his GS-12 Financial Management Analyst position with the agency's Defense Finance and Accounting Service (DFAS) based on a charge of absence without leave (AWOL). Initial Appeal File (IAF), Tab 11 at 4, 19-25. The agency alleged that the appellant was AWOL for 532 hours from September 26, 2017, through January 5, 2018, which amounted to 66.5 workdays or 13.3 workweeks. *Id.* at 42. It asserted that, during that time period, the appellant reported for duty on only 3 days. *Id.* It further claimed that the appellant had exhausted all available leave balances, including leave under the Family and Medical Leave Act (FMLA). *Id.* The agency noted that, although the appellant had requested the accommodation of working from home due to his multiple sclerosis, IAF, Tab 12 at 37, this accommodation "would be ineffective because [he] had failed to meet [his] performance standards while previously working from home and had been placed on a PIP [performance improvement plan] on April 28, 2017," IAF, Tab 11 at 43. It indicated that, because of the appellant's poor performance, he required close supervision and retraining that could not be accomplished remotely. *Id.* The agency stated that, although it was willing to consider other arrangements, the appellant was not willing to consider any accommodation other than the flexibility to telework at his discretion. *Id.* at 22, 43; IAF, Tab 12 at 61.

Until early 2017, the appellant teleworked 2 to 3 days per week under the agency's nonaccommodation DFAS Telework Program. IAF, Tab 11 at 5, Tab 12 at 73, 95-96, Tab 18 at 27. On January 6, 2017, his supervisor limited his telework to 1 day per week because he had been missing deadlines and failing to submit work products timely or "at all." IAF, Tab 12 at 73, Tab 18 at 28, Tab 25 at 4. A few weeks later, his supervisor observed that he "failed to deliver work products in a timely manner, teleworked without approval, and was [AWOL]." IAF, Tab 12 at 73. In late January 2017, she issued him a Letter of Warning and revoked approval for regular telework days. *Id.* at 48-50, 73-74, Tab 18 at 28.

On March 21, 2017, the agency issued him a letter of reprimand based on a charge of Failure to Perform Assigned Duties within Required Time Frames, supported by eight specifications. IAF, Tab 12 at 7-8. The agency notified the appellant that, because of the letter of reprimand, he was now ineligible to participate in the agency's telework program for 12 months unless he was approved for medical telework as a reasonable accommodation. *Id.* at 9. This action was consistent with the agency's standard policy "to remove someone from telework once they have been issued disciplinary or performance paperwork." IAF, Tab 18 at 28.

On March 31, 2017, the appellant requested medical telework as a reasonable accommodation based on his multiple sclerosis. IAF, Tab 12 at 11, Tab 25 at 5. He referenced a Form WH-380-E, Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act), and noted that he was "requesting flexibility of telework schedule" and stated that he required "flexibility to telework upon [his] discretion." IAF, Tab 12 at 30, 61. The record includes a February 6, 2017 Form WH-380-E from the appellant's doctor indicating that the appellant had multiple sclerosis, including fatigue, bowel issues, a weak immune system, headaches, and double vision. *Id.* at 26-27, 29-31, 33. The document indicated that the appellant was not unable to perform any of his job functions due to the condition, though it was medically necessary for him to be absent from work during flare-ups, he could work from home during such flare-ups, and he should have the flexibility to telework when necessary. *Id.* at 27-28, 31-32. By memorandum dated April 5, 2017, the agency requested a medical report from the appellant's health care provider supporting his reasonable accommodation request. *Id.* at 11. An April 17, 2017 doctor's note indicated that fatigue was the appellant's most disabling symptom and that, "[i]f he can perform some of his duties from home, this would help him in dealing with his current symptoms." *Id.* at 37. On April 28, 2017, the agency informed the appellant that his performance was

unacceptable and placed him on a PIP. *Id.* at 13-15. On May 10, 2017, the appellant met with his supervisor and the agency's reasonable accommodation program manager to discuss his reasonable accommodation request. IAF, Tab 18 at 19-23. On May 17, 2017, the agency approved the appellant's request for FMLA leave.[2] IAF, Tab 12 at 17. On May 18, 2017, however, the agency denied his request for the reasonable accommodation of medical telework based on a determination that the accommodation would be ineffective. *Id.* at 35. The agency explained that the appellant failed to meet his performance standards while previously working from home and that he was unwilling to consider other accommodation options, such as changes to his on-site work environment. *Id.*

The agency then issued an August 25, 2017 Letter of Concern informing the appellant that the agency was unable to support his continued absences for medical reasons outside his control, he had exhausted his leave under the FMLA on August 9, 2017, he was being carried in an AWOL status, he needed to return to duty, and continuing to grant him leave without pay was not in the best interest of the Federal Government. *Id.* at 18. The agency notified him that, alternatively, he could request a reasonable accommodation, apply for donated leave, or apply for disability retirement. *Id.* at 18-19. In a September 7, 2017 memorandum, the agency again noted the appellant's request for medical telework as a reasonable accommodation and requested a medical report from his health care provider. *Id.* at 22-23. The appellant thereafter did not return to work except for the 3 days mentioned above. *Id.* at 41-43, 99-108; IAF, Tab 11 at 60-69. The agency proposed the appellant's removal on January 16, 2018, and effected his removal on February 16, 2018. IAF, Tab 11 at 19-25, 42-44.

On appeal to the Board, the appellant disputed the agency's charge and alleged that the action was based on disability discrimination, namely, the agency's failure to accommodate him. IAF, Tabs 1, 15-16, 27. After a hearing,

---

[2] The approval appeared to be retroactive to April 5, 2017. IAF, Tab 12 at 17.

the administrative judge affirmed the removal action. IAF, Tab 33, Initial Decision (ID) at 1, 14. The administrative judge found that the agency proved its charge by preponderant evidence and proved a nexus between the charge and the efficiency of the service. ID at 4-7. She found that the appellant did not prove disability discrimination based on a failure to reasonably accommodate him.[3] ID at 7-10. The administrative judge found that, although the appellant was an individual with a disability, he did not show that he was a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of his position. ID at 8-10. In this regard, the administrative judge noted that, although medical evidence from the appellant's physicians indicated that he was able to work, he failed to come to work and his work performance was deficient. ID at 8-9. The administrative judge also held that the agency engaged in the interactive reasonable accommodation process but the appellant rejected reasonable accommodation options offered by the agency that were "not his selected reasonable accommodation where the appellant could telework each week as many days each week that he determined was appropriate." ID at 9. The administrative judge noted that the appellant was not guaranteed the reasonable accommodation of his choice and that teleworking was a problem because he was not performing his work in a timely manner and some projects were not completed at all. ID at 10. Finally, the administrative judge found that the penalty of removal was reasonable. ID at 11-13.

---

[3] The administrative judge cited to *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 23 (2013), for the principle that, under a mixed-motive analysis, an appellant's remedy is limited if the agency shows by clear and convincing evidence that it would have taken the same action absent the discriminatory motive. ID at 8. The allegations in *Southerland* did not, however, involve a claim of failure to accommodate. *Southerland*, 119 M.S.P.R. 566, ¶¶ 11, 16-17. Moreover, the appellant has not alleged reprisal for requesting an accommodation. *Cf. id.*, ¶¶ 19, 21. In any event, the Board has overruled the finding in *Southerland* that an agency can avoid liability by proving by clear and convincing evidence that it would have taken the same action absent an improper motive. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 47. Thus, there is no basis to rely on *Southerland* in this case.

The appellant asserts on review that his request to telework at his discretion was reasonable. Petition for Review (PFR) File, Tab 1 at 4. He contends that the fact that he functioned as a Financial Management Specialist from 2007 until the agency declared him AWOL on September 26, 2017, established by preponderant evidence that he was a qualified individual with a disability who could perform the essential functions of his position with or without a reasonable accommodation. *Id.* at 5. The appellant also asserts that the agency bore the burden of proving, but failed to prove, that granting his reasonable accommodation request would impose an undue hardship on its operations. *Id.* at 5-7. The agency opposes the petition for review. PFR File, Tab 3.

## ANALYSIS

To establish disability discrimination based on a failure to accommodate claim, an employee must show that: (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014). An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Id.*; 29 C.F.R. § 1630.9(a). Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13; Equal Employment Opportunity Commission (EEOC) Enforcement Notice No. 915.002, *Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (Oct 17, 2002).

<u>The appellant showed that he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g).</u>

An appellant may prove that he has a disability by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). Here, the administrative judge found that the appellant is an individual with a disability based on his diagnosed multiple sclerosis. ID at 2, 8; IAF, Tab 12 at 31, 37. The agency has not challenged this finding, and we find no basis to disturb it. *Cf. Equal Employment Opportunity Commission v. Chevron Phillips Chemical Company*, 570 F.3d 606, 618 (5th Cir. 2009) (recognizing that relapsing-remitting conditions like multiple sclerosis can constitute a disability); *Feldman v. Law Enforcement Associates Corporation*, 779 F. Supp. 2d 472, 483-84 (E.D.N.C. 2011) (holding that episodic multiple sclerosis flare-ups can be a disability).

<u>The appellant showed that he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m).</u>

A qualified individual with a disability is a person who, with or without reasonable accommodation, can perform the essential functions of a position. 42 U.S.C. § 12111(8); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28; 29 C.F.R. § 1630.2(m). Here, we find that the appellant showed that he is a qualified individual with a disability. The appellant provided medical documentation indicating that his medical condition did not render him unable to perform any of his job functions, though it was medically necessary for him to be absent from work during flare-ups, he could work from home during such flare-ups, and that he should have the flexibility to telework when necessary. IAF, Tab 12 at 27-28, 31-32. Although the agency determined that the appellant's request for an accommodation of working from home would be ineffective because the appellant "had failed to meet [his] performance standards while previously working from home," IAF, Tab 11 at 43, the appellant had

previously only been approved to telework 2 to 3 days per week as part of a standard, nonaccommodation telework agreement, *e.g.*, IAF, Tab 18 at 27. The appellant's failure to perform acceptably under this prior agreement does not demonstrate that flexible telework as needed for flare-ups, potentially of up to 5 days per week depending on medical need, would have been ineffective; indeed, the medical documentation in the record reflects that the appellant could perform his duties with this increased flexibility. *E.g.*, IAF, Tab 12 at 28, 37. Thus, we find that the appellant showed that he is a qualified individual with a disability as defined by 29 C.F.R. § 1630.2(m).

We find that the agency failed to provide the appellant with reasonable accommodation.

Once an appellant has requested accommodation, the employer must engage in an interactive process to determine an appropriate accommodation. *Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 17 (2011). "The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. part 1630, App., § 1630.9. However, a failure to engage in the interactive process alone does not violate the Rehabilitation Act; rather, the appellant must show that this omission resulted in a failure to provide reasonable accommodation. *Sanchez*, 117 M.S.P.R. 155, ¶ 18. In other words, the appellant must establish that reasonable accommodation existed. *See Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 24 (2006).

Here, the appellant requested flexible telework based on medical need on March 31, 2017. IAF, Tab 12 at 11, Tab 25 at 5. It is well-established that a request for telecommuting because of a disability triggers an agency's responsibility under the Rehabilitation Act. *See, e.g.*, *Barney G. v. Social Security Administration*, EEOC Appeal No. 2021000802, 2022 WL 4546523, at *8 n.6 (Sept. 12, 2022). Although agency officials met with the appellant to discuss his request, they denied the same on May 18, 2017, based on a

determination that the accommodation would be ineffective because he had previously failed to meet performance standards while teleworking.[4] IAF, Tab 11 at 43, Tab 12 at 35. However, as indicated, the appellant's work deficiencies occurred during a prior, nonaccommodation telework arrangement. The agency had significantly decreased his telework days by the time he was issued a letter of reprimand, placed on a PIP, and ultimately removed from his position. *See Nicki D. v. Equal Employment Opportunity Commission*, EEOC Appeal No. 0720180023, 2021 WL 4477010, at *9-10 (Sept. 18, 2021) (finding that the appellant was not being adequately accommodated at the time her performance deficiencies manifested). Here, the appellant repeatedly identified what he believed to be an effective accommodation and supported his request with ample medical documentation. Although the agency granted the appellant's request for FMLA leave, in the absence of undue hardship, "an agency should provide reasonable accommodations that permit an employee to keep working rather than choosing to put the employee on leave." *Denese G. v. Department of the Treasury*, EEOC Appeal No. 0120141118, 2016 WL 7742966, at *16 (Dec. 29, 2016). Thus, we find that the agency failed to properly engage in the interactive process.[5]

---

[4] However, as discussed above, the agency's March 21, 2017 letter of reprimand, which addressed performance deficiencies, had informed the appellant that he was ineligible to telework "unless you have been approved for medical telework as a reasonable accommodation." IAF, Tab 12 at 9.

[5] To the extent that the agency argues that the appellant's flexible telework would have imposed an undue hardship on the agency's business operations, we find that the record does not support such a position. *See* 29 C.F.R. § 1630.2(p)(1) (stating that, in general, an undue hardship exists when provision of the requested accommodation would cause the employing agency significant difficulty or expense). To this end, although the notice of proposed removal indicated that the appellant required close supervision and retraining that could not be accomplished remotely, IAF, Tab 11 at 43, the appellant's supervisor testified that there was no difference regarding the supervision of the appellant when he was teleworking versus when he was in the office, IAF, Tab 32-2 (testimony of the appellant's first-line supervisor). Moreover, the agency already had an established telework program. *E.g.*, IAF, Tab 18 at 27; *see Elsa S. v. National Aeronautics and Space Administration*, EEOC Appeal No. 0720180021, 2020 WL

Accordingly, the appellant proved his claim of disability discrimination on the basis of a failure to reasonably accommodate. Because the appellant met his burden of proving the agency engaged in a prohibited personnel practice that led to his removal, i.e., violating the Rehabilitation Act by failing to grant him reasonable accommodation, the agency's action must be reversed. *See* 5 U.S.C.§ 7701(c)(2)(B); 5 U.S.C. § 2302(b)(1); 5 C.F.R. § 1201.56(c)(2).

## ORDER

We ORDER the agency to cancel its removal action and restore the appellant to duty effective February 16, 2018. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement

---

949689 at *9 (Feb. 14, 2020) (finding no undue hardship when the complainant's requested accommodations were in place within the agency, available to employees, and allowed her to perform the essential functions of her position).

with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary

losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:
        *Gina K. Grippando*
_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.